# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN WALKER, JAMES BRAUN, MONA PEREZ, and MELISSA CARMICHAEL,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>JOHN BRYSON, in his official capacity as the Secretary of the UNTIED STATES DEPARTMENT OF COMMERCE; and ROBERT GROVES, in his official capacity as the Director of the UNITED STATES CENSUS BUREAU, an agency of the UNITED STATES DEPARTMENT OF COMMERCE,<br><br>　　　　　Defendants.<br>_____ / | CASE NO. 1:11-cv-01195-AWI-SKO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO SEVER**<br><br>(Doc. 48) |

## I.   INTRODUCTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, and pursuant to the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, brought by former employees of the United States Census Bureau ("Census Bureau"). Plaintiffs filed the complaint in this Court on July 18, 2011.

On October 20, 2011, Plaintiffs filed a First Amended Complaint. On April 24, 2012, the district court dismissed Plaintiffs' complaint with leave to amend, and a Second Amended Complaint

("SAC") consistent with the Court's April 24, 2012, order was filed on May 14, 2012, stating Title VII and ADEA claims against Defendants John Bryson in his official capacity as the Secretary of the United States Department of Commerce and Robert Groves in his official capacity as the Director of the United States Census Bureau (collectively, "Defendants"). (Doc. 34.)

On October 11, 2012, the Court reviewed the parties' briefs and found the matter suitable for a decision without a hearing pursuant to U.S. District Court for the Eastern District of California's Local Rule 230(g). (Doc. 51.) For the reasons that follow, Defendants' motion to sever is GRANTED IN PART and DENIED IN PART.

## II. FACTUAL BACKGROUND[1]

### A. Plaintiff Robin Walker

Robin Walker is the lead Plaintiff; she is a Caucasian female over the age of 40 who was employed by the Census Bureau from December 2008 to January 15, 2010, as an Administrative Assistant at the Fresno Local Census Office (the "Fresno Office"). (Doc. 34, ¶ 8.) Walker alleges that during her employment she was subjected to discrimination, harassment, and retaliation on the basis of her race, sex, national origin, and because of her involvement in protected activities related to a complaint she filed on December 7, 2009.[2] (Doc. 34, ¶ 28.)

Plaintiff Walker asserts that her "work relationship with Census Bureau supervisor Munoz was difficult because he was chauvinistic in his attitude, believed all women were subservient[;] and expressly relied heavily on the Bible in support of his arguments and/or decisions." (Doc. 34, ¶ 31(f).) For example, "Supervisor Munoz seldom, if at all, approved a female employee from leaving the office on the same business as males." (Doc. 34, ¶ 31(g).) Walker also asserts that "Supervisor Munoz had a pattern of discriminatory behavior towards older Caucasian female

---

[1] The factual background is based upon Plaintiffs' SAC.

[2] The caption of the First Cause of Action in the complaint indicates that Plaintiff Walker is suing under Title VII on the basis of sex, race, religion, and for complaining of said practices; however, the First Cause of Action contains no allegations explaining how Plaintiff was discriminated on the basis of her religion and instead alleges that Plaintiff was discriminated and harassed on the "basis of her race (Caucasian), sex (female), national origin (USA)[,] and because of her involvement in protected EEO activities including (without limitation) her 12/07/09 EEO complaint and her refusal to falsify minutes of a 12/11/[09] meeting as directed by Walker's duly employed Census Bureau supervisors." (Doc. 34, ¶ 28.)

2

subordinates." (Doc. 34, ¶ 31(h).)

Walker alleges that "Census Bureau officials commonly used the Spanish language with supervisors Ramirez and Barcelo and other bilingual employees, especially in management meetings and RCC conference management meetings,[1] and during the course of the work day, while non-Spanish speaking employees were present." (Doc. 34, ¶ 31(q).) In addition, "Supervisor Barcelo was overheard telling another employee (in Spanish) that the assistant managers should all be terminated. Supervisors Ramirez and Barcelo spoke in Spanish about another employee who they were going to fire." (Doc. 34, ¶ 31(r).) In approximately November 2009, "supervisors announced a bilingual requirement for all recruiting assistants." (Doc. 34, ¶ 31(o).) "Walker and others complained about it[,] because it was not a requirement of their employment." (Doc. 34, ¶ 31(o).) The testing procedures "were manipulated to exclude non-bilinguals with higher qualifications," and "bilingual changes to testing procedures were made by Regional Census Center management." (Doc. 34, ¶ 31(p).) On December 7, 2009, Walker filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (Doc. 34, ¶ 31(i).) Supervisors Munoz and Ramirez became aware of Walker's EEOC complaint shortly after she submitted it. (Doc. 34, ¶ 31(j).) Thereafter, on December 8 or 9, 2009, supervisors Ramirez and Barcelo began accusing Walker of tardiness and other misconduct. (Doc. 34, ¶ 31(k).)

On approximately December 21 or 22, 2009, Walker refused a directive from supervisor Ramirez that Walker falsify minutes of a December 11, 2009, meeting regarding the termination of two other employees. (Doc. 34, ¶ 31(l).) In that same period of time, supervisor Munoz "implied that Walker[']s EEO complaint caused a 'conflict of interest' with her continuing employment in the position of Administrative Assistant." (Doc. 34, ¶ 31(m).) Walker also alleges that she was falsely accused of unprofessional behavior; insubordination; fits of temper; foul language; tardiness; absence without notice or authority; diverting from daily, weekly, and monthly work requirements; a refusal to complete assignments; refusal to perform tasks and/or work assignments; and falsifying her payroll documents. (Doc. 34, ¶ 31(n).) Walker asserts she was also falsely accused of, and her

---

[1] The SAC does not provide an explanation defining "RCC conference management meetings," or state whether Walker was involved in such meetings.

3

employment was terminated for, leaving work without notice or authority on January 14, 2010. (Doc. 34, ¶ 31(n).)  Prior to this, Walker contends she "never received any prior written or verbal discipline with regard to unprofessional conduct." (Doc. 34, ¶ 31(n).)

Walker alleges that normal procedures were not used to terminate her employment; for example, the rule allowing 3 days to improve performance prior to termination was not followed. (Doc. 34, ¶ 31(s).)  Following Walker's termination, she was replaced by a "bilingual Hispanic female in her late 20's or early 30's."  (Doc. 34, ¶ 31(t).)  Walker also asserts a claim under the ADEA that she was discriminated against due to her age. (Doc. 34, ¶¶ 41-51.)

**B.     Plaintiff Braun**

Plaintiff James Braun was employed by the Census Bureau in the Fresno Office as an "Administrative Clerk-Security" from approximately November 2008 until June 1, 2010. (Doc. 34, ¶ 53.)  Braun's supervisors included "Barcelos,"[2] Sabroe, and Munoz, and he alleges that these supervisors discriminated, harassed, and retaliated against him by knowingly and falsely repeating to third parties that Braun was a thief, and accused Braun of belittling "FOS Galaraza."[3]  (Doc. 34, ¶ 57(a)-(b).)  Braun also claims that his employment was terminated in retaliation for his complaints about the oppressive atmosphere, his protected activity in making complaints regarding the termination of Robin Walker's employment, and because of his race, sex, and religion. (Doc. 34, ¶¶ 57(c), 58.)   Braun also states a claim under the ADEA for discrimination, harassment, and retaliation based on his age. (Doc. 34, ¶¶ 67-77.)

**C.     Melissa Carmichael**

Plaintiff Melissa Carmichael was employed by the Census Bureau as an Office Operation Supervisor at the Fresno Office from approximately March 2010 to May 30, 2010.[4]  (Doc. 34, ¶ 79.)  Carmichael alleges the following discrimination, harassment, and retaliation occurred by her

---

[2] The SAC alternatively refers to a supervisor "Barcelo" and a supervisor "Barcelos."  The proper spelling of this supervisor's last name is unclear. (*Compare* Doc. 34, ¶¶ 56, 82 *with* ¶¶ 31, 95.)

[3] No details are pled in the complaint explaining what "FOS" denotes or identifies Galaraza or indicates whether Galaraza was a co-worker of Braun.

[4] The SAC indicates that Carmichael was terminated on January 15, 2010 (the same day as Walker), and contrarily alleges that she worked until May 30, 2010 (*Compare* Doc. 34, ¶¶ 10, 79 *with* Doc. 34, ¶ 80).

4

supervisors, Barcelo, Hescox, Alonzo, and Enos:

    a.    Plaintiff was subjected to repeated discrimination on the basis of her sex.

    b.    A Census Bureau male employee, Delgadillo, repeatedly made comments to staff members claiming that Plaintiff was not qualified for her position and that he would not work with her or take orders from her because she was a woman.

    c.    Plaintiff timely complained to her supervisor, Thayer.

    d.    Plaintiff then complained to supervisor Hescox, acting AMA and Regional Technician.

    e.    No remedial action was ever taken.

    f.    Plaintiff continued to complain [but] still no action was taken.

    g.    Delgadillo continued to discriminate against plaintiff by [] making derisive comments about Plaintiff and refused to communicate with her except in the form of letters and comments written by De[l]gadillo on Plaintiff's desk.

    h.    Plaintiff was again assured that the discrimination would be handled and would stop.

    i.    When Delgadillo continued his harassment, Plaintiff complained directly to supervisor Alonzo. Delgadillo[5] claimed the matter was already taken care of when it was not [and] told Plaintiff that he did not care about her feelings.

    j.    The next day, supervisor Hescox reprimanded Plaintiff for complaining to supervisor Alonzo.

    k.    On or about 5/20/10, Plaintiff was informed that either Plaintiff's two sons who worked for the Census [Bureau], or Plaintiff Carmichael, would have to resign immediately. Neither Plaintiff nor her two sons resigned.

    l.    Plaintiff filed an EEO complaint on or about 5/21/10, and Plaintiff was transferred on or about 5/24/10 to a position in recruiting.

    m.    Plaintiff was not given any work in the new position.

    n.    Plaintiff's transfer reduced her ending position and job employment from 9/30/10 to 5/30/10.

(Doc. 34, ¶ 83.)

---

[5] In the context of the allegation, identifying Delgadillo as claiming that the matter was taken care of appears to be a typographical error.

**D.    Mona Perez**

Plaintiff Mona Perez was employed by the Census Bureau as a Crew Leader at the Fresno Office from approximately September 2009 to June 10, 2010.[6] (Doc. 34, ¶ 92a.) Perez is an Hispanic female, over the age of 40. (Doc. 34, ¶¶ 93, 109.) Perez asserts that during her employment she was subjected to discrimination, harassment, and retaliation on the basis of her race, sex, and place of national origin. (Doc. 34, ¶ 93.) She also claims to have been discriminated, harassed, and retaliated against due to her involvement in EEOC activities including a complaint she filed with the EEOC on December 7, 2009, and her refusal to falsify minutes of a December 11, 2009, meeting as directed by her supervisors, Ramirez and Barcelo. (Doc. 34, ¶ 93.) Plaintiff alleges that the unlawful conduct was conducted through supervisors Barcelo, Docken, and Munoz. (Doc. 34, ¶ 95.) Plaintiff claims that these supervisors ignored her complaints about the directive that she falsify records; they falsely claimed that Perez was directed to turn in all binders when neither Plaintiff nor anyone else had ever been directed to suddenly turn in incomplete binders; and they terminated Perez' employment for allegedly not turning in the binders, which was pretextual. (Doc. 34, ¶ 96.) Perez also claims that these supervisors lied about Perez "being an average performer when they brought her into a poor performing neighborhood because of her outstanding performance." (Doc. 34, ¶ 96(f).) Perez also states a claim for age discrimination pursuant to the ADEA. (Doc. 34, ¶¶ 106-16.) Other than alleging her employment was terminated because of her age (Doc. 34, ¶ 112), there are few factual details provided in support of her ADEA claim. (Doc. 34, ¶¶ 106-16.)

### III.    DISCUSSION

**A.    Legal Standard**

Federal Rule of Civil Procedure 20 provides that persons may join in one action as plaintiffs if:

> (A)    they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

---

[6] The SAC contrarily alleges that Plaintiff Perez was employed from December 2008 to January 15, 2010 (*see* Doc. 34, ¶ 11) and that her employment was terminated on June 10, 2010 (*see* Doc. 34, ¶ 92a).

6

(B)     any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1)(A)-(B).

The permissive joinder rule "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency* ("*Lake Tahoe*"), 558 F.2d 914, 917 (9th Cir. 1997). The purpose of Rule 20(a) is to address the "broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

For there to be transactional relatedness under Rule 20(a)(1)(A), the claims must arise out of the same transaction, occurrence, or series of transactions or occurrences. Fed. R. Civ. P. 20(a)(1)(A). There is no bright-line definition of "transaction," "occurrence," or "series." Instead, courts assess the facts of each case individually to determine whether joinder is sensible in light of the underlying policies of permissive party joinder. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). Although there might be different occurrences, where the claims involve enough related operative facts, joinder in a single case may be appropriate. *See Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) ("'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not such much upon the immediateness of their connection as upon their *logical relationship*.").

The second part of the joinder test requires commonality. Commonality under Rule 20(a)(1)(B) is not a particularly stringent test. *Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 231 (M.D. Tenn. 2001) ("the common question test[] is usually easy to satisfy"). The Rule requires only a single common question, not multiple common questions. Fed. R. Civ. P. 20 ("any question of law or fact common to . . . "). The common question may be one of fact or of law and need not be the most important or predominant issue in the litigation. *See Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (Fed. R. Civ. P. 20(a) does not establish a quantitative or qualitative test for commonality).

Federal Rule of Civil Procedure 21 provides that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop

a party. The court may also sever any claim against a party."

Thus, if the test for permissible joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by severance. *Coughlin,* 130 F.3d at 1350. In such a case the court may generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs "against some or all of the present defendants based on the claims or claims attempted to be set forth in the present complaint." *Id*.

**B.     Analysis**

Defendants assert that Plaintiffs are misjoined because their claims involve varied factual allegations, they occupied different positions at the Census Bureau, discrete employment actions were taken against each of them, and their employment spanned different time periods. (Doc. 48-1, 9:11-13.)[7] Specifically, each Plaintiff alleges a different set of discriminatory, harassing, or retaliatory conduct. Plaintiffs allege discrimination both on the basis of being male (Plaintiff Braun) and female (Plaintiffs Walker, Carmichael, and Perez), and on the basis of being Caucasian (Walker, Braun, and Carmichael) and Hispanic (Perez). (Doc. 48-1, 10:20-22.) There are some factual allegations that are common to more than one Plaintiff; for example, both Walker and Perez make allegations about the falsification of meeting minutes, and Braun claims that he was retaliated against for his complaint regarding the termination of Walker's employment. Defendants assert, however, that the differences among the four Plaintiffs' claims predominate. (Doc. 48-1, 10:19-25.) Further, because Plaintiffs' claims arise out of separate employment decisions based upon different facts, they do not satisfy the commonality requirement. (Doc. 48-1, 12:6-19.)

Moreover, Defendants contend that severance is appropriate even to the extent Plaintiffs are properly joined under Rule 20 because there is a risk of jury confusion. (Doc. 48-1, 12:21-13:24.) Defendants argue that here, although the jury would be charged with evaluating the evidence of particular events separately, there is a risk that the jury will consider claims relating to one Plaintiff in determining the merits of the claims made by others. (Doc. 48-1, 13:11-13.) Defendants conclude

---

[7] All references to page numbers in the parties' briefs correlate to the CM/ECF pagination assigned at the top margin of each filed document.

8

that, given the likelihood of jury confusion and resulting prejudice to Defendants, joinder of these Plaintiffs does not comport with the principles of fairness and is not appropriate. (Doc. 48-1, 13:22-24.)

> **1.    Plaintiffs Walker, Braun, and Perez are Not Misjoined**
>
> > **a.    Plaintiffs Walker, Braun, and Perez' Claims Arise Out of the Same Transaction or Occurrence**

Permissive joinder requires that any joined claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1)(A). The Ninth Circuit defines the term "transaction or occurrence" to mean "similarity in the factual background of a claim." *Bautista v. Los Angeles County*, 216 F.3d 837, 842-43 (9th Cir. 2000). Claims that "'arise out of a systematic pattern of events' arise from the same transaction or occurrence." *Id.*

In *Coughlin*, for example, forty-nine plaintiffs alleged that the Immigration and Naturalization Service unreasonably delayed plaintiffs' separate applications and petitions in violation of the Administrative Procedure Act and the U.S. Constitution. 130 F.3d at 1349. In affirming the district court's conclusion that the claims did not satisfy the "same transaction" requirement, the Ninth Circuit noted:

> The first prong, the "same transaction" requirement, refers to similarity in the factual background of a claim. In this case, the basic connection among all the claims is the alleged procedural problem of delay. However, the mere allegation of general delay is not enough to create a common transaction or occurrence. Each Plaintiff has waited a different length of time, suffering a different duration of alleged delay. Furthermore, the delay is disputed in some instances and varies from case to case. And, most importantly, there may be numerous reasons for the alleged delay. Therefore, the existence of a common allegation of delay, in and of itself, does not suffice to create a common transaction or occurrence.

*Id*. at 1350.

In contrast, in *Mosley*, claims brought by ten plaintiffs alleging they had been injured by a company-wide policy designed to discriminate against African-Americans were found by the Eighth Circuit to have "arise[n] out of the same series of transactions or occurrences," a racially discriminatory workplace. 497 F.2d at 1333-34. Thus, even though the plaintiffs claims appeared factually distinct, they were united in their theory that the employer discharged them all pursuant to one central company-wide policy.

1   Defendants rely on several district court decisions, including *Bailey v. Northern Trust Co.*, 196 F.R.D. 513, 516-17 (N.D. Ill 2000), asserting that courts routinely find plaintiffs misjoined who are alleging discriminatory practices of their employer when the alleged discrimination occurred at different times, by different individuals, involved different conduct, and where employees occupied different positions. Defendant also cites *Grayson v. K-Mart Corp.*, 849 F. Supp. 785, 787-89 (N.D. Ga 1994). In *Grayson v. K-Mart Corp.,* 849 F. Supp. 785, 789-90 (N.D. Ga. 1994), eleven plaintiffs were employed as former store managers of defendant K-Mart. The plaintiffs filed suit for age discrimination under the Age Discrimination in Employment Act. *Id.* The court found that the claims of each plaintiff were not transactionally related, as each plaintiff worked in a different store, was geographically remote from the other plaintiffs, the decision to demote each plaintiff originated with his district manager and was derived within the context of each plaintiff's store business circumstances, and three different regional managers participated in the eleven demotion decisions at issue. *Id.*

Here, Defendants argue that Plaintiffs' claims involve a distinct set of supervisors or co-workers who are alleged to have taken part in the discriminatory and harassing conduct, each plaintiff occupied different positions, and each assert claims based upon a discrete set of facts. While there are factual differences among each of Walker, Braun, and Perez' claims, they are nonetheless related. Unlike in *Bailey* where "no single team leader or section manager [was] implicated in all five of the plaintiffs' claims," Walker, Braun, and Perez share two supervisors (Barcelo and Munoz) they each claim was involved in the wrongful conduct against them. Additionally, although Walker, Braun, and Perez had different job titles and worked in different job positions, they all worked in the same office and neither party asserts that they were divided by different divisions or departments; moreover, the fact that they shared at least two supervisors tends to support the presumption that they all worked under the same departmental or divisional umbrella. Further, the time periods of the alleged discrimination are not particularly divergent – Walker, Braun, and Perez' claims all arise out of conduct that occurred between 2008 and 2010.

While Defendants argue these similarities are insufficient to establish that the claims arise out of the same transaction or series of transactions, at this early stage of the proceedings,

Defendants' argument as it pertains to Walker, Braun, and Perez is not persuasive. The Supreme Court has directed that Rule 20 is to be construed liberally to promote trial convenience and to expedite the final determination of disputes in an effort to prevent multiple lawsuits. *Gibbs*, 383 U.S. at 715; *see also Lake Tahoe*, 558 F.2d at 917. Braun's claim of retaliation arises, in part, out of complaints he made regarding Defendants' treatment of Walker. Thus, there is a logical relationship between Braun's claims of retaliation and Walker's claims of discrimination and harassment. In turn, Walker and Perez both allege some similar conduct by at least one shared supervisor. Specifically, both Walker and Perez allege they made EEOC complaints on December 7, 2009, and both claim they were subsequently directed to falsify notes from a December 11, 2009, meeting by supervisor Ramirez.[8] (Doc. 34, ¶¶ 31(k), 93.) Both Walker and Perez allege claims of gender discrimination and harassment; notably they share a supervisor, Munoz, who Walker alleges was "chauvinistic in his attitude" and "believed all women were subservient," and both plaintiffs' claim Munoz was involved in the alleged wrongful conduct against them. (Doc. 34, ¶ 31(f).) Despite the fact that the allegations in the SAC are limited, at this early stage of the proceedings and in light of the Supreme Court's requirement that joinder rules be applied liberally, based on what is presently before the Court, the claims of Walker, Braun, and Perez arise out of the same series of transactions or occurrences for purposes of Rule 20(a)(1).

Finally, although Defendants quote *Robinson v. Geithner* for the proposition that Title VII plaintiffs fail to meet the transactional relatedness test under Rule 20 where the alleged discrimination does not stem from the application or implementation of particular policy, *Robinson* is distinguishable on several grounds. No.1:05-cv-01258-LJO-SKO, 2011 WL 66158 (E.D. Cal. Jan. 10, 2011). First, the claims of each plaintiff in *Robinson* had almost no factual overlap. For example, the plaintiffs in *Robinson* shared no common supervisor, the time periods of employment were divergent, each plaintiff worked in wholly separate divisions, and no plaintiff claimed that they were retaliated against for making complaints about how another plaintiff was treated. *Id*. at *7-8. Second, *Robinson* does not stand for a bright-line proposition that a failure to allege a common

---

[8] Plaintiff Perez alleges that both Ramirez and Barcelo directed her to falsify notes from a December 11, 2009, meeting. (Doc. 34, ¶ 93.)

policy or a single policy-maker *precludes* proper joinder of plaintiffs asserting Title VII claims against a single employer. Rather, in light of the differences in the factual allegations of each plaintiff, the lack of a common policy or decision maker to bind the claims together distinguished *Robinson* from *Mosley*, 497 F.2d 1330, and exemplified how the plaintiffs' claims in *Robinson* did not arise out of the same transaction or occurrence or series of transactions or occurrences. *Id.* at * 8. Finally, the complaint in *Robinson* contained significant factual allegations which had been explored through discovery. *Robinson*, 2011 WL 66158, at *6 (noting that factual basis had been "recently fleshed out in more detail through depositions and discovery").

### b. Walker, Braun, and Perez' Claims Involve Common Questions of Law or Fact

Defendants argue that, pursuant to *Coughlin, Bailey,* and *Grayson*, Plaintiffs' claims do not share a common question of fact or law despite the fact that the claims all arise out of employment at the same Census Bureau office in Fresno and that all allege discrimination of some type.

"[T]he mere fact that all Plaintiffs' claims arise under the same general law does not necessarily establish a common question of law or fact." *Coughlin*, 130 F.3d at 1351. Where claims require significant "individualized attention," they do not involve "common questions of law or fact." *Id.* In *Bailey*, the court found that commonality was lacking because the claims were based upon wholly separate acts of the defendant with respect to each plaintiff. 196 F.R.D. at 517. The court concluded that, simply because the plaintiffs' claims were based on the same general theories of law, this was insufficient to satisfy the commonality requirement. *Id.*

Accordingly, the fact that Walker, Braun, and Perez' claims all arise under Title VII and the ADEA is not sufficient in and of itself to show the claims involve a common question of law or fact. However, Braun's retaliation claim shares a common question of fact with regard to the claims of Walker. Specifically, Braun asserts that he was retaliated against for complaints he made to his supervisors regarding Defendants' treatment of Plaintiff Walker. Under Title VII, an employer cannot "discharge any individual, or otherwise . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). An employer may not retaliate against an employee for "oppos[ing] any practice made an unlawful employment practice by this

subchapter." *Id.* § 2000e-3(a). Under Section 2000e-3(a), a complaint by an employee that a supervisor has violated Title VII may constitute protected activity for which the employer cannot lawfully retaliate. *See Trent v. Valley Elec. Ass'n, Inc.*, 41 F.3d 524, 526 (9th Cir. 1994).

To present a prima facie case of retaliation in this regard, Braun must establish that he was (1) engaged in a protected activity under Title VII, (2) Defendants subjected him to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004). Not every act by an employee in opposition to discrimination is protected activity; Braun must show that his complaints as they relate to Defendants' treatment of Walker was protected activity. *See Trent*, 41 F.3d at 526. In other words, Braun will have to establish facts showing that Defendants' treatment of Walker was unlawful or that he reasonably believed the conduct was unlawful. *Id*. In turn, Walker will have to establish Defendants' treatment of her was unlawful to prove her claims of discrimination and harassment. In both cases, Defendants' treatment of Walker will be a shared issue of fact. This shared factual issue distinguishes this case from *Bailey* where the court noted that none of the plaintiffs alleged there was any relationship between their terminations. *Bailey*, 196 F.R.D. at 516. Here, Braun has specifically alleged that his termination was connected to his complaints about Defendants' treatment of Walker. Therefore, there is at least one factual issue common to Walker and Braun. This is sufficient at this stage to show commonality. *Bridgeport Music, Inc.*, 202 F.R.D. at 231 (the "common question test[] is usually easy to satisfy").

Additionally, Walker and Perez' claims appear to share common issues of fact. Both submitted EEOC complaints on the same day and alleged that they were subsequently directed to falsify records from a December 11, 2009, meeting by at least one shared supervisor. Both Walker and Perez were also supervised by Munoz who Walker alleged was chauvinistic in his attitude about women; both Walker and Perez alleged discrimination on the basis of their gender (female). Braun was also supervised by Munoz, and alleges Munoz was responsible for unlawful conduct against him, including alleged retaliation for his complaints related to how Walker was treated. Thus, it appears that there are common questions of fact related to the direction by a shared supervisor to falsify minutes of a meeting and common questions of fact regarding supervisor Munoz' conduct as

it pertains to Walker and Perez' gender discrimination claims – which are, in turn, related to Braun's retaliation claim. *See Mosley*, 497 F.2d at 1333 (the common question may be one of fact or of law and need not be the most important or the predominant issue in the litigation).

### c. Insufficient Evidence of Potential Prejudice

Defendants assert that, even if Plaintiffs are properly joined under Rule 20, their claims should nonetheless be severed under Rule 21 to avoid prejudicing Defendants at trial. Defendants argue that, in employment discrimination cases involving multiple plaintiffs, courts commonly find severance appropriate when there is a risk that a jury may erroneously conflate similar yet unrelated evidence and render findings of fact that could not be supported had the plaintiffs been required to present and prove their claims individually. (Doc. 48-1, 13:3-9.) Defendants argue that in this case there is a danger that the jury will consider claims relating to one plaintiff in determining the merits of the claims made by others. Defendants contend that a single trial involving all of Plaintiffs' claims would present the jury with the "hopeless task of trying to discern who did what to whom and for what reason." (Doc. 48-1, 13:20-21 (quoting *Moorhouse v. Boeing Co.*, 501 F. Supp. 390, 392 (E.D. Pa. 1980), *aff'd*, 639 F.2d 774 (3d Cir. 1980)).)

Plaintiffs contend that there is no basis to sever the cases based on prejudice and that, in fact, Plaintiffs will be prejudiced if their claims are severed. With respect to prejudice to Defendants if the cases are not severed, Plaintiffs assert that they share several common supervisors, and the claims all involve harassment and discrimination in a single office that occurred over a short period of time. Plaintiffs do not explain how these similarities would preclude prejudice to Defendants – in fact, given Defendants allegation that these similarities would confuse the jury, these factors appear to support Defendants' argument.

However, Plaintiffs also argue that Defendants' claim of prejudice does not account for careful jury instructions, juror intelligence, compartmentalizing by the trial court regarding the evidence as to each, and separate jury instructions pertaining to specific claims. (Doc. 49, 9:2-5.) This case is still in its earliest stages – i.e., no discovery has occurred, a scheduling conference has not been held, and it appears the parties have not yet made initial disclosures under Rule 26(a). Whether and to what degree the claims will involve overlapping witnesses is presently unknown.

Additionally, because the factual scope of each claim is not particularly clear, especially in light of the paucity of factual allegations in the SAC, it is premature to determine whether Defendants will be prejudiced by presenting Plaintiffs' claims in one trial. For example, in the absence of any discovery or even the exchange of initial disclosures, Defendants are not in a position to explain how each case will rely on different documentary proof or on a different cast of witnesses such that it would be overly confusing for the jury. Until further discovery has been completed and initial disclosures have been exchanged, Defendants' claims of prejudice are speculative and essentially unsupported. Finally, it is more efficient at this stage for the cases to proceed together, particularly for the purpose of pretrial discovery. *See Dougherty v. Mieczkowski*, 661 F. Supp. 267, 280 (D. Del. 1987) ("At this stage of the proceedings, the Court cannot fairly determine whether the plaintiffs' claims arise from a series of transactions for joinder under Rule 20. Moreover, upon completion of pretrial proceedings, the number of plaintiffs and claims could be significantly diminished, lessening any need for severing the trials.").

### d. Conclusion

For the reasons set forth above, Defendants' motion to sever the claims of Plaintiffs Walker, Braun, and Perez is denied. However, such denial is without prejudice to renewing a Rule 21 motion at a later date for two interrelated reasons. First, currently the SAC is the only basis for considering whether Plaintiffs' claims are properly joined, and as it pertains to Walker, Braun, and Perez, the allegations are limited. Second, initial disclosures have not been exchanged and no discovery has yet taken place. Once sufficient discovery has been completed, Defendants may file a renewed Rule 21 motion for severance setting forth a more specific showing how Plaintiffs Walker, Braun, and Perez' claims are misjoined, if further factual discovery tends to establish that their claims do not arise out of the same series of transactions or occurrences.

Additionally, during discovery Defendants may obtain information showing more specifically how presentation of Plaintiffs' claims in one trial will prejudice Defendants such that a renewed Rule 21 motion may be appropriate. In *Dougherty*, the district court denied defendants' motion to sever without prejudice predicated on the early stage of the proceedings. 661 F. Supp. 267, 280 (D.Del. 1987). The court reasoned that, "[o]nce the record is complete, the 10b-5 theories may not apply

uniformly to each plaintiff, permitting severance of some claims . . . The Court will deny defendants' motion to sever without prejudice to renew the motion after completion of discovery and all other pretrial proceedings." *Id.* Given the limited nature of present information about the scope of the claims of Plaintiffs Walker, Braun, and Perez, Defendants are not precluded from refiling the motion to sever at a later stage of the proceedings. Alternatively or additionally, after more factual development, Defendants may file a motion for separate trials under Federal Rule of Civil Procedure 42(a).

### 2.     Plaintiff Carmichael's Claims Are Misjoined

Although the allegations of the complaint are somewhat minimal, Carmichael's claims stand apart from the other Plaintiffs. Unlike Walker, Braun, or Perez, Carmichael's claims center in large part on alleged discrimination and harassment from a co-worker rather than that of supervisors. Carmichael asserts that a male co-worker, Delgadillo, repeatedly made comments to staff members that Carmichael was not qualified for her position and would not take orders from her because she was a woman. (Doc. 34, ¶ 83(b).) Carmichael complained to her supervisors, but no action was taken. (Doc. 34, ¶ 83(d), (f).) Delgadillo continued to discriminate against Carmichael and refused to communicate with her, except in the form of letters and comments left by Delgadillo on Carmichael's desk. (Doc. 34, ¶ 83(g).)

Plaintiff Carmichael also alleges a different type of adverse employment action taken by Defendants than that alleged by Walker, Braun, and Perez. Specifically, Carmichael's position as an Office Operation Supervisor was set to end on September 30, 2010, as it was ostensibly a temporary position. (Doc. 34, ¶ 83(n).) Her employment was not terminated for any wrongful conduct; instead, she alleges she was transferred to a new position with an ending date of May 30, 2010. (Doc. 34, ¶ 83(n).) While Carmichael asserts that she was asked to resign due to violation of Defendants' nepotism policy, she does not allege her employment was ended because of violation of a nepotism policy. On May 24, 2012, she asserts her supervisors transferred her to a position in recruiting that accelerated her employment ending date from September 30, 2010, to May 30, 2010. In contrast, Walker, Braun, and Perez were all terminated from their employment for insubordination or other alleged misconduct rather than transferred to a different position. (Doc. 34, ¶¶ 32(i), 55,

16

96(d).)

Other than asserting that Carmichael shared one supervisor in common with the other Plaintiffs, no argument is presented by Plaintiffs as to how Carmichael's claims arise out of the same transaction or series of transactions as those of Walker, Braun, and Perez. There are no allegations *how* Plaintiffs' supervisor (Barcelo) was involved in unlawful conduct directed at Carmichael in a manner similar or related to Walker, Braun, and Perez. Further, other than the fact that Carmichael asserts discrimination under Title VII, there do not appear to be any common questions of law or fact based on the allegations presented in the SAC or in Plaintiffs' opposition to Defendants' motion to sever.

In sum, Carmichael's allegations do not indicate that her claims arise out of the same transaction, occurrence, or series of transactions or occurrences as Walker, Braun, and Perez' claims. Further, because the claims do not appear to be logically related and are predicated on a divergent and distinct set of facts from the other Plaintiffs, there does not appear to be a common question of fact or law.

### 3. Severance of Plaintiff Carmichael's Claims Would Not Prejudice a Substantial Right

Under Rule 21, "[if] the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." *Coughlin*, 130 F.3d at 1350. Misjoinder does not require dismissal. *See DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006) (upon a finding of misjoinder, a court "has two remedial options: (1) misjoined parties may be dropped 'on such terms as are just'; or (2) any claims against misjoined parties 'may be severed and proceeded with separately'"); *see generally Coalition for a Sustainable Delta v. U.S. Fish & Wildlife Serv.*, No. 1:09-cv-480-OWW-GSA, 2009 WL 3857417, at *8 (E.D. Cal. Nov. 17, 2009).

Dismissing Plaintiff Carmichael's claims, as opposed to severing them into a new lawsuit, is not efficient. The practical effect of dismissing Plaintiff Carmichael's claims could result in (1) an additional lawsuit that would stand in a different posture than the existing litigation, requiring both parties to expend additional resources; (2) the creation of additional legal issues – e.g., upon filing

a new complaint, Plaintiff Carmichael may be required to establish her time for filing suit should be equitably tolled; (3) subjecting the parties to duplicative and repetitive procedural requirements; and (4) no savings of any judicial resources. Therefore, the Court finds that it is more reasonable to sever Plaintiff Carmichael's claims and allow them to proceed as a separate lawsuit, which shall be administratively managed with this case.

Although Plaintiffs argue severing the cases will lead to duplicative discovery, as Defendants correctly note in their reply brief, there is no reason why discovery in both suits cannot be coordinated to reduce or eliminate unnecessarily repetitive discovery, such as one deposition of a supervisor common to all four Plaintiffs. Severing the claims of Plaintiff Carmichael is not prejudicial.

### IV.   CONCLUSION

Accordingly, THE COURT HEREBY ORDERS that:

1. Defendant's Motion to Sever Plaintiffs' claims is GRANTED IN PART AND DENIED IN PART;

    a. As to Plaintiff Carmichael, Defendants' motion to sever is GRANTED;

    b. As to Plaintiffs Walker, Braun, and Perez, Defendants' motion to sever is DENIED WITHOUT PREJUDICE.

2. The Clerk of the Court is DIRECTED to:

    a. Sever Plaintiff Carmichael's claims into a distinct case by opening a new case;

    b. Assign the new case to the same presiding and referral judges currently assigned to this case; and

    c. Relate the new case to this case for administrative efficiency.

IT IS SO ORDERED.

**Dated:   October 16, 2012**                /s/ Sheila K. Oberto
                                                                        UNITED STATES MAGISTRATE JUDGE